**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

JENNIFER G.,[1]                                      )
                                                     )
    *Plaintiff,*                                     )
                                                     )
        v.                                        )   Civil No. 3:23-cv-113-DJN-SLS
                                                     )
MARTIN O'MALLEY,                                     )
Commissioner of the                                  )
Social Security Administration,[2]                   )
                                                     )
    *Defendant.*                                     )
_____             )

## REPORT AND RECOMMENDATION

In this action, Plaintiff Jennifer G. seeks review of the Commissioner of the Social Security Administration's ("SSA") decision to deny her Title II application for disability insurance benefits. This matter comes before the Court for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment. (ECF Nos. 13, 15.) The motions have been fully briefed (ECF Nos. 13-16), rendering this matter ripe for review.

Plaintiff requests that the Court direct an award of benefits, or in the alterative, remand the case under sentence four of 42 U.S.C. § 405(g). (Plaintiff's Memorandum in Support of Plaintiff's Motion for Summary Judgment (ECF No. 14) ("Pl.'s Mem.") at 15.) As the basis for such relief, Plaintiff argues that the Administrative Law Judge ("ALJ") erred by failing to: (1) include all

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he has been substituted for Acting Commissioner Kilolo Kijakazi as Defendant in this action. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

established limitations in the residual functional capacity ("RFC") determination; (2) adequately articulate her findings in resolving inconsistencies between medical opinion evidence and the ultimate RFC determination; (3) fully develop the administrative record; and (4) consider all durational periods of at least twelve months.  (Pl.'s Mem. at 3, 8.)  The Commissioner disagrees with these assignments of error and requests that the Court affirm the Commissioner's decision that Plaintiff was not disabled.  (Defendant's Motion for Summary Judgment and Brief in Support (ECF No. 15) ("Def.'s Mem.") at 14-23.)

For the reasons set forth below, the Court finds that: (1) the ALJ applied the correct legal standards in determining Plaintiff's RFC, and substantial evidence supports the RFC determination; (2) the ALJ adequately articulated her findings in considering the record and the medical opinion evidence in a way that allows for meaningful review; (3) the ALJ properly developed the administrative record in accordance with the regulations; and (4) the ALJ did not err in finding that Plaintiff failed to prove disability, even considering a closed period of disability. Therefore, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 13) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 15) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on June 17, 2020, alleging disability beginning July 5, 2019.  (Administrative Record ("R.") at 64, 76-77.)[3]  In her application,

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for the year of birth), and financial account numbers from this Report and Recommendation. The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

Plaintiff alleged that she suffered from anterior lumbar interbody fusion, anterior cervical discectomy and fusion, and posterior cervical discectomy and fusion. (R. at 64.) The SSA denied Plaintiff's claims initially and again upon reconsideration. (R. at 74, 76, 84-93.) Plaintiff requested a hearing before an ALJ, and one was held on May 9, 2022. (R. at 32-63, 100-01.)

On June 28, 2022, the ALJ issued a written decision, finding that Plaintiff was not disabled under the Social Security Act ("the Act"). (R. at 15-24.) On December 16, 2022, the SSA Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (R. at 1-4.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II.     STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation). At step one, the ALJ must review the claimant's current work activity to determine if he or she has been participating in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ must ask whether the claimant's medical impairments meet the regulations' severity and duration requirements. *Id.* § 404.1520(a)(4)(ii).

At step three, the ALJ must determine whether the medical impairment(s) meet or equal an impairment listed in the regulations. *Id.* § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must determine the claimant's RFC, which accounts for the most that the claimant can do despite his or her impairments. *Id.* § 404.1545(a).

At step four, the ALJ must assess whether the claimant can perform his or her past employment given the claimant's RFC. *Id.* § 404.1520(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, and the claimant must prove that his or her limitations preclude the claimant from performing his or her past relevant work. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). If such past work can be performed, then benefits will not be awarded, and the analysis ends. *See* 20 C.F.R. § 404.1520(e). However, if the claimant cannot perform his or her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy. *See id.* § 404.1520(a)(4)(v). The Commissioner usually offers this evidence through the testimony of a vocational expert ("VE"). *See Mascio*, 780 F.3d at 635.

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio*, 780 F.3d at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way,

without interference by the courts." *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).  Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion.  *Id.*

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)); *see Craig*, 76 F.3d at 589.  The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)).  If a fact is supported by substantial evidence, the reviewing court must affirm, regardless of whether the court agrees with such findings.  *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)).  If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the reviewing court must reverse the decision.  *See Breeden*, 493 F.2d at 1007.

### III.   THE ALJ'S DECISION

The ALJ analyzed Plaintiff's disability claim in accordance with the five-step evaluation process.  (R. at 15-24.)  *See* 20 C.F.R. § 404.1520(a)(4); *Mascio*, 780 F.3d at 634.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 5, 2019 (the alleged onset date).  (R. at 18.)  At step two, the ALJ determined Plaintiff suffered from the severe impairments of degenerative disc disease and obesity.  (R. at 18-19.)  In addition to Plaintiff's severe impairments, the ALJ opined that Plaintiff had the non-severe impairments of hypothyroidism and hypertension.  (R. at 18.)  The ALJ considered Plaintiff's history of headaches

and attributed these to her cervical spine degenerative disease.  (R. at 19.)  At step three, the ALJ determined that Plaintiff did not have an impairment, individually or in combination, which met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 19.)

The ALJ then determined Plaintiff's RFC.  (R. at 19-22.)  Based on the evidence in the record, the ALJ found that Plaintiff retained the ability to perform a range of light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations:

> [Plaintiff] can stand and/or walk up to four hours in an eight-hour workday. She can occasionally reach overhead bilaterally, climb, stoop, kneel, crouch, or crawl, and can tolerate occasional exposure to vibration.

(R. at 19.)  The ALJ explained that she determined Plaintiff's RFC after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p."  (R. at 19.)

At the hearing, Plaintiff testified that she was in a state of "constant pain" and when she would "try to do something, it would intensify the pain."  (R. at 43.)  She also testified that in a typical day, from 9 a.m. to 5 p.m., she spent about five hours in her bed or recliner.  (R. at 47.)  The ALJ's decision acknowledged Plaintiff's testimony, noting that Plaintiff indicated she was "unable to work due to chronic pain that limits her ability to sit, stand, walk, lift, and carry. . . . [S]he cannot sit for more than five to 10 minutes, she cannot stand or walk for more than 10 minutes, and she cannot lift more than five pounds."  (R. at 20.)  The ALJ further noted Plaintiff reported trouble sleeping, a limited ability to use her upper and lower extremities, and sensitivity to vibrations.  (R. at 20.)  However, the ALJ also noted that Plaintiff testified to "driv[ing] herself to her doctor's appointments two to four times a week, … visit[ing] with her grandmother, … grocery shopping, and din[ing] outside of her residence a few times a month."  (R. at 20.)  Plaintiff

also reported that she could and did dress herself, perform self-care and household chores, prepare simple meals, read, and watch television.  (R. at 20.)

The ALJ acknowledged Plaintiff's history of degenerative disc disease in her cervical and lumbar spinal areas, including the lumbar and cervical surgeries she underwent during the period at issue.  (R. at 20.)  The ALJ further noted that Plaintiff "consistently complains of pain during treatment visits," which had not fully resolved despite pain medication, physical therapy, and injections.  (R. at 20.)  But the ALJ also found that recent imaging of Plaintiff's "lumbar and cervical spinal areas show[ed] no more than mild neural foraminal stenosis in her cervical spine and no more than moderate neural foraminal stenosis in her lumbar spine, with treatment providers noting both areas appear[ed] stable."  (R. at 20.)  Plaintiff also displayed normal strength and mobility during her treatment visits.  (R. at 20.)  The ALJ also considered Plaintiff's history of obesity, although there was "little indication in the record that [Plaintiff's] obesity [was] a significant concern for her treatment providers."  (R. at 21.)  Ultimately, the ALJ concluded that Plaintiff's "degenerative disc disease primarily causes her standing and walking, manipulative, postural, and environmental limitations" and that her obesity "contributes" to those limitations. (R. at 21.)

The ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms . . . not entirely consistent with the medical evidence and other evidence in the record . . . ."  (R. at 20.)  Specifically, the ALJ found such statements inconsistent with Plaintiff's stated daily, weekly, and monthly activities as well as Plaintiff's generally normal physical functioning documented during treatment visits.  (R. at 21.)

The ALJ also "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c."  (R. at 19.)  The ALJ first

considered the opinion of Bert Spetzler, M.D. ("Dr. Spetzler"), who reviewed Plaintiff's file in September 2021.  (R. at 21.)  Dr. Spetzler opined that Plaintiff could perform light work but could only occasionally climb, stoop, kneel, crouch, or crawl.  (R. at 21.)  The ALJ stated that Dr. Spetzler's findings were generally consistent with the record evidence which establishes Plaintiff "has residual nerve pain despite surgical treatment, but does not have particularly significant physical limitations" and that his findings were supported by his "careful review of the record evidence."  (R. at 21.)  The ALJ found Dr. Spetzler's opinion to be persuasive but included additional limitations in the RFC pertaining to standing and walking and environmental conditions. (R. at 21.)  Specifically, the ALJ limited Plaintiff to standing and/or walking up to four hours in an eight-hour workday and to occasional exposure to vibration.  (R. at 19.)  The ALJ explained she included those additional limitations in the RFC "in light of [Plaintiff's] testimony and record evidence available at the hearing level."  (R. at 21.)

The ALJ next considered the opinion of Brian Strain, M.D. ("Dr. Strain"), who reviewed Plaintiff's file in August 2020.  (R. at 21.)  Dr. Strain found that Plaintiff could perform sedentary work with occasional reaching overhead and climbing ladders, ropes, or scaffolds.  (R. at 21.)  The ALJ found the opined postural limitations supported by and consistent with the record evidence but found "little indication of ongoing lifting and carrying limitations below light exertion in the record."  (R. at 21-22.)  The ALJ noted that Plaintiff "generally displays normal physical functioning during treatment visits, and the record evidence available at the hearing level establishes" that Plaintiff could perform light work with the additional limitations in standing and walking and added environmental limitations as provided in the RFC.  (R. at 22.)  Therefore, the ALJ found Dr. Strain's opinion partially persuasive as to postural limitations, but not persuasive as to exertional or environmental limitations.  (R. at 22.)

The ALJ then considered the opinion of state agency psychological consultant Jo McClain, Psy.D. ("Dr. McClain") and found it to be persuasive. (R. at 22.) Dr. McClain reviewed Plaintiff's records in August 2020 and found that Plaintiff had no severe medically determinable mental impairments. (R. at 22.) The ALJ found that this opinion was consistent with the lack of evidence regarding a mental impairment in the record and supported by Dr. McClain's "careful review of the record." (R. at 22.)

After completing the RFC assessment, the ALJ determined Plaintiff's vocational factors. She found that Plaintiff was unable to perform any past relevant work (namely, as a school bus driver) and had at least a high school education. (R. at 22.) The ALJ noted that Plaintiff met the definition of a younger individual at the alleged onset date, but subsequently changed age categories to an individual closely approaching advanced age at the time of the decision. (R. at 22.)

At step five, the ALJ concluded that there were jobs in significant national numbers that Plaintiff could perform given her limitations and other vocational factors. (R. at 23.) The ALJ adopted the VE's testimony that Plaintiff could perform the jobs of garment folder, marker, and rental clerk. (R. at 23-24.)

### IV.   ANALYSIS

In reviewing the Commissioner's decision to deny Plaintiff's application, the Court must determine whether: (1) the ALJ has applied the correct legal standards; and (2) the ALJ's findings are supported by substantial evidence. *Mascio*, 780 F.3d at 634 (citing *Bird*, 699 F.3d at 340). "In reviewing for substantial evidence, [a court must not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). Consequently, as long as the judgment is

explained and supported by substantial evidence, this Court must accept the Commissioner's decision, even if this Court would reach an opposite conclusion or weigh the evidence differently if it were conducting a *de novo* review of the record.  *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Rhyne v. Astrue*, No. 3:09-cv-412, 2011 WL 1239800, at *3 (W.D.N.C. Mar. 30, 2011).

For the reasons that follow, this Court finds that: (1) the ALJ's RFC determination is supported by substantial evidence and complies with the regulations; (2) the ALJ applied the correct legal standards in analyzing the record, including the medical opinion of Dr. Strain, and adequately articulated her findings; (3) the ALJ developed the administrative record in accordance with the regulations; and (4) the ALJ did not err in finding that Plaintiff failed to prove disability for a closed 12-month period.

### A. The ALJ Applied Correct Legal Standards in Determining the RFC, and Substantial Evidence Supports the RFC Determination

Plaintiff argues that the ALJ erred by failing to include any limitations in the RFC relating to Plaintiff's cervical impairments even though the "record is rife with instances of limited range of motion of [Plaintiff's] cervical spine" which "would absolutely have caused limitations in her ability to perform work."  (Pl.'s Mem. at 3, 5.)  The Commissioner counters that substantial evidence supports the RFC and that the ALJ considered both Plaintiff's cervical and lumbar spine limitations in her decision.  (Def.'s Mem. at 14-15.)  As discussed below, the Court finds that the ALJ applied correct legal standards assessing Plaintiff's impairments and resulting limitations, including her cervical impairments, and in determining the RFC and that substantial evidence supports the RFC determination.

Relying on medical records from Mudit Sharma, M.D. ("Dr. Sharma") and others showing treatment for cervical spine impairment and symptoms from the same, Plaintiff first faults the ALJ

for failing "to even mention Dr. Sharma." (Pl.'s Mem. at 4-5.) As the Commissioner points out, however, the ALJ discussed Plaintiff's treatment history, including surgical procedures performed by Dr. Sharma, and acknowledged Plaintiff's reports of pain to her treating providers, including Dr. Sharma. (Def.'s Mem. at 16; R. at 20.) The ALJ adequately reviewed Plaintiff's history of "degenerative disc disease in her cervical and lumbar spinal areas," acknowledged Plaintiff's "remote lumbar and cervical surgery and two additional cervical surgeries during the period at issue," and otherwise considered Plaintiff's medical record. (R. at 20-21 (citations to record evidence omitted).)[4]

Next, Plaintiff contends that the ALJ failed to "include any limitations relating to [Plaintiff's] documented cervical impairments," "accommodate" a reduced range in motion, or "include any manipulative limitations in her RFC determination." (Pl.'s Mem. at 3, 6; *see also* Plaintiff's Reply Brief ("Pl.'s Reply") (ECF No. 16) at 3.) The ALJ's decision shows otherwise. The ALJ acknowledged that Plaintiff's degenerative disc disease caused manipulative and environmental limitations. (R. at 21.) Contrary to Plaintiff's position that it lacked any limitations related to her cervical impairment, the RFC determination included manipulative limitations of occasional reaching overhead bilaterally and environmental limitations of occasional exposure to

---

[4] To the extent Plaintiff questions whether the ALJ considered specific pages of the record, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in h[er] decision." *Reid v. Commissioner of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)). Indeed, an "ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Massey v. Astrue*, No. 3:10-2943-TMC, 2012 WL 909617, at *2 (D.S.C. Mar. 16, 2012) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)); *see also Blaine v. Astrue*, No. 4:09-cv-104, 2010 WL 3291824, at *3 n.7 (E.D. Va. June 3, 2010) (noting that "the ALJ's failure to specifically cite to [referenced] evidence does not imply that he did not consider all of the available evidence in making his decision").

vibration.  (R. at 19); *see also* SSR 96-8p, 1996 WL 374184, at *6 (listing "reaching" as an example of a manipulative activity).

Finally, Plaintiff contends that the ALJ failed to explain how her cervical spine impairment and resulting limitations would affect her ability to work.  (Pl.'s Mem. at 4.)  The ALJ's decision again refutes this argument.  At the hearing, Plaintiff answered questions about how her cervical spine impairments impacted her.  (R. at 43-44, 51-54.)  The ALJ acknowledged Plaintiff's testimony about her "limited ability to use her upper and lower extremities," but found her statements about the intensity, persistence, and limiting effects of her symptoms inconsistent with the treatment notes and Plaintiff's stated daily, weekly, and monthly activities.  (R. at 20, 21.)  The ALJ then considered the record evidence, including: (1) recent imaging that showed "no more than mild neural foraminal stenosis in her cervical spine, and no more than moderate neural foraminal stenosis in her lumbar spine"; (2) treatment provider notes indicating that "both areas appear[ed] stable"; (3) treatment records documenting that Plaintiff "displays normal strength and mobility during treatment visits" and "normal physical functioning"; and (4) Plaintiff's testimony and statements that she could perform daily activities, including driving herself to doctor's appointments multiple times a week, visiting her grandmother, shopping for groceries, dining outside her home a few times a month, performing self-care, preparing simple meals, and performing simple household chores, watching television, and reading.  (R. at 20-21.)  The ALJ also considered medical opinion evidence and adopted the only recommended manipulative limitation of no more than occasional reaching overhead.  (R. at 21-22.)  The ALJ concluded that the RFC determination was "supported by the medical evidence of record, by [Plaintiff's] testimony and statements regarding her daily activities, and by the [medical opinion evidence]."

(R. at 22.)  Because the ALJ applied correct legal standards and her conclusions fall within the bounds of the substantial evidence standard, the Court finds no basis for remand.[5]

Plaintiff similarly challenges the ALJ's review of the entirety of the medical evidence as "lacking specificity and support." (Pl.'s Mem. at 10.)  She contends that the "ALJ's discussion of the medical evidence is simply insufficient to allow for meaningful judicial review." (Pl.'s Mem. at 10.)  This argument fails for similar reasons as those discussed above.  The ALJ's decision sufficiently discusses the impairments at issue, Plaintiff's statements regarding her symptoms and resulting limitations, Plaintiff's treatment history and medical records, Plaintiff's stated daily, weekly, and monthly activities, as well as medical opinion evidence in the record.  (R. at 19-22.)  The ALJ's decision complies with applicable legal standards, built a logical bridge from the evidence to the conclusions, and facilitated meaningful judicial review.

---

[5]  The Court also notes that even if the ALJ erred in failing to include additional manipulative limitations in the RFC, such error would be harmless.  The VE identified the following representative examples of occupations that an individual with Plaintiff's RFC and vocational factors could perform: (1) garment folder (with approximately 66,000 jobs available in the national economy); (2) marker (approximately 65,000 jobs available); and (3) rental clerk (approximately 56,000 jobs available).  (R. at 23, 58-60.)  At the hearing, Plaintiff's attorney questioned the VE about the impact "an additional limitation of only occasional use of the upper bilateral extremities, handling, fingering, and feeling" would have on those representative examples.  (R. at 60.)  The VE responded that the rental clerk position with approximately 56,000 jobs in the national economy would still be available.  (R. at 60-61.)  Therefore, even if the RFC should have included additional manipulative limitations, one occupation still existed in significant numbers in the national economy consistent with that RFC and Plaintiff's vocational factors.  20 C.F.R. § 404.1566(b) ("Work exists in the national economy when there is a significant number of jobs (in *one* or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications.") (emphasis added).  *See also Fenton v. Saul*, No. 4:19-cv-72, 2020 WL 6380134, at *7 (E.D. Va. June 30, 2020), *report and recommendation adopted*, 2020 WL 5587710 (E.D. Va. Sept. 17, 2020) (finding harmless error even though one job conflicted with manipulative limitations "because the vocational expert identified two other jobs that did not have a conflict"); *Daryl B. v. Saul*, No. 3:19-cv-280, 2020 WL 1471690, at *13 (E.D. Va. Mar. 26, 2020) (finding no error "even assuming that the occupation of bottle packer proves inconsistent with Plaintiff's RFC" because the ALJ identified "the additional occupation of marker").

**B. The ALJ Adequately Articulated Her Findings Regarding Medical Opinion Evidence and the RFC Determination**

In her second assignment of error, Plaintiff argues that the ALJ failed to "explain how the inconsistencies between the opinion of the state agency medical consultant[, Dr. Strain,] and the ultimate RFC determination were considered and resolved." (Pl.'s Mem. at 8.) The Court finds that the ALJ properly articulated her findings with respect to Dr. Strain's medical opinion in accordance with the law and that substantial evidence supports the ALJ's conclusion.

*1. The ALJ's Analysis of Dr. Strain's Medical Opinion*

State agency medical consultant Dr. Strain reviewed Plaintiff's medical records in August 2020. (R. at 21, 68-73.) He found Plaintiff "could perform sedentary work but could only occasionally climb ladders, ropes, or scaffolds or reach overhead . . . ." (R. at 21.) In her decision, the ALJ stated the following:

> Dr. Strain's findings with regard to [Plaintiff's] postural limitations are supported by the evidence and generally consistent with the record, but there is little indication of ongoing lifting and carrying limitation below light exertion in the record, as [Plaintiff] generally displays normal physical functioning during treatment visits, and the record evidence available at the hearing level establishes that [Plaintiff] has additional limitations in standing and walking and additional environmental limitations, as noted above. As a result, the undersigned finds Dr. Strain's opinion partially persuasive, but not persuasive as to [Plaintiff's] exertional or environmental limitations.

(R. at 21-22.) The ALJ adopted similar postural and manipulative limitations, limiting Plaintiff to occasional reaching overhead bilaterally, climbing, stooping, kneeling, crouching, or crawling. (R. at 19.) But the ALJ found that Plaintiff could perform light work—instead of sedentary work—with added exertional limitations on standing and/or walking up to four hours

in an eight-hour workday and environmental limitations of no more than occasional exposure to vibration.  (R. at 19.)

      2.  *Evaluating Medical Opinion Evidence for Claims Filed on or After March 27, 2017*

An ALJ is required to adequately explain his or her reasoning to facilitate meaningful judicial review.  *See Woods v. Berryhill*, 888 F.3d 686, 692-94 (4th Cir. 2018); *see also* 42 U.S.C. § 405(b)(1) ("Any such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.").  The regulations have articulated specific rules for evaluating medical opinions.

Claims involving medical opinion evidence filed on or after March 27, 2017 are evaluated using a revised regulatory framework.  *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  This framework applies in Plaintiff's case.  (R. at 15.)  The revised regulations provide that the ALJ must evaluate each medical opinion and articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion[,]" including familiarity with the other evidence or understanding of disability program policies and requirements.  20 C.F.R. § 404.1520c.  Supportability and consistency are the "most important" factors, and the ALJ must discuss how these factors were considered in the written opinion.  *Id.* § 404.1520c(b)(2).  The ALJ may, but is not required to, explain how the other factors were considered.  *Id.*

3. *The ALJ Applied Correct Legal Standards in Evaluating Dr. Strain's Opinion, and Substantial Evidence Supports the ALJ's Findings*

In this case, the ALJ applied correct legal standards in evaluating Dr. Strain's opinion, and the ALJ's determinations pertaining to this opinion are supported by substantial evidence.  The ALJ determined that Dr. Strain's findings with respect to Plaintiff's postural limitations (e.g., stooping, climbing) were supported by the evidence and generally consistent with the record, but found "little indication of ongoing lifting and carrying limitation below light exertion in the record."  (R. at 21-22.)  *See* SSR 96-8p, at *6.  The ALJ supported this conclusion with reference to Plaintiff's normal physical functioning during medical visits and incorporated other record evidence available at the hearing level and discussed within the decision.  (R. at 22.)  *See Tony P. v. Kijakazi*, No. 3:21-cv-529, 2022 WL 3337749, at *5 (E.D. Va. July 11, 2022) (noting that the ALJ's decision should be considered "as a whole" in the supportability and consistency analysis).  Indeed, the ALJ previously stated in her decision that Plaintiff displays normal strength and mobility during treatment visits and that Plaintiff's cervical and lumbar spine limitations appear stable.  (R. at 20.)  The ALJ also found Plaintiff's statements about her symptoms inconsistent in part because of her own stated daily, weekly, and monthly activities.  (R. at 21.)  While Dr. Strain's opinion found Plaintiff could perform sedentary work, the ALJ complied with the applicable legal standard in considering and rejecting that opinion.  In doing so, the ALJ properly discussed which limitations and evidence she found credible and why—she found Dr. Strain's opinion persuasive in terms of postural limitations and unpersuasive in terms of exertional limitations.  *See Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013).

Plaintiff challenges the ALJ's focus on "lifting and carrying limitations" in rejecting the sedentary work limitation.  (Pl.'s Mem. at 9.)  Given the nature of sedentary versus light work, the Court finds the ALJ's discussion of lifting and carrying capacity unsurprising.

Sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  SSR 83-10, 1983 WL 31251, at *5.  Light work, on the other hand, involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  *Id.*  Here, in finding Dr. Strain's sedentary work recommendation unpersuasive, the ALJ properly explained that the record contained little indication of a lifting and carrying limitation below light exertion.  (R. at 22.)

Plaintiff next contends that the ALJ herself found that Plaintiff "had additional limitations in standing and walking beyond the two-hour (sedentary) limit opined by Dr. Strain," creating "a material inconsistency" and making "meaningful review impossible in this case."  (Pl.'s Mem. at 9.)  The Court sees no material inconsistency in the ALJ's decision. Sedentary work, recommended by Dr. Strain, generally involves no more than two hours of standing or walking in an eight-hour workday.  (R. at 72.)  *See* 20 C.F.R. § 404.1567(a); SSR 83-10, at *5.  A "full range of light work," on the other hand, "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  SSR 83-10, at *6. Here, regarding the standing/walking requirement, the ALJ found Plaintiff fell in between the light and sedentary exertional levels.  Therefore, the RFC limits Plaintiff to light work with an additional limitation of no more than four hours of standing and walking in an eight-hour day. (R. at 19.)  In finding Dr. Strain's opinion unpersuasive as to exertional limitations, the ALJ determined that the record supported Plaintiff's ability to perform light work with the "additional limitations in standing and walking [no more than four hours in a day] and additional environmental limitations [occasional exposure to vibrations], as noted above."  (R. at 22.)  Nothing prohibits the ALJ from including additional limitations on Plaintiff's ability

to perform light work in determining the RFC.  The Court thereby finds no legal error in the ALJ's RFC determination, including in her account of Plaintiff's exertional abilities.

###   C.  The ALJ Fully Developed the Administrative Record in Accordance with the Regulations

Plaintiff next argues that the ALJ "failed to fully develop the administrative record despite ongoing changes in [Plaintiff's] condition over the course of the period at issue."  (Pl.'s Mem. at 12.)  Specifically, Plaintiff argues that the ALJ never ordered that Plaintiff undergo a consultative examination to assess her spinal limitations.  (Pl.'s Mem. at 12.)  Plaintiff also challenges the opinions of the state agency medical consultants as dated.  (Pl.'s Mem. at 12-13.)  Thus, Plaintiff contends the ALJ's decision is based on "nothing more than her own lay speculation and an incomplete summary of the medical evidence."  (Pl.'s Mem. at 13; *see also* Pl.'s Reply at 6.)  Defendant counters that while mandated to develop the record fully and fairly, the ALJ "is not required to act as Plaintiff's counsel."  (Def.'s Mem. at 20-21.)  For the reasons that follow, the Court determines that the ALJ complied with applicable legal standards in developing the administrative record.

The law places the burden on the claimant to present evidence of disability.  42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(a); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("Claimant had the burden of proving her disability to the satisfaction of the Secretary….") However, the regulations and case law impose an obligation on the ALJ to develop the record.  20 C.F.R. § 404.1512(b)(1) ("[W]e will develop your complete medical history for at least the 12 months preceding the month in which you file your application . . . . We will make every reasonable effort to help you get medical evidence from your own medical sources and entities that maintain

your medical sources' evidence when you give us permission to request the reports."); *see also Sims v. Apfel*, 530 U.S. 103, 111 (2000) ("It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits. . . ."); *Collins v. Saul*, No. 3:19-cv-824, 2020 WL 4516855, at *9 (S.D.W. Va. July 17, 2020), *report and recommendation adopted*, 2020 WL 4508312 (S.D.W. Va. Aug. 5, 2020) ("[T]he ALJ is required to ensure that the record contains sufficient evidence upon which the ALJ can make an informed decision."). Notably, the Fourth Circuit has held that the ALJ has "a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record" and "cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (references omitted). When an ALJ "fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant, the case should be remanded." *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980).

On the other hand, this Court has also acknowledged that while the ALJ "bears some responsibility for the development of the record, at the same time the ALJ is entitled to assume that a claimant represented by counsel is making his [or her] strongest case for benefits." *Zook v. Comm'r of Soc. Sec.*, No. 2:09-cv-109, 2010 WL 1039456, at *4 (E.D. Va. Feb. 25, 2010), *report and recommendation adopted*, *Zook v. Astrue*, 2010 WL 1039830 (E.D. Va. Mar. 18, 2010) (citing *Nicholson v. Astrue*, 341 F. App'x 248, 253 (7th Cir. 2009)). In fact, "such a duty [born by the ALJ] does not permit a claimant, through counsel, to rest on the record…and later fault the ALJ for not performing a more exhaustive investigation." *Perry v. Astrue*, No. 3:10-cv-1248, 2011 WL 5006505, at *15 (S.D.W. Va. Oct. 20, 2011) (citation omitted).

Here, the Court finds no legal error in the ALJ's development of the administrative record. While Plaintiff contends the ALJ erred in failing to order a consultative examination (Pl.'s Mem.

at 12), regulations generally permit such an examination only where the ALJ has "made every reasonable effort to obtain evidence from [claimant's] own medical sources" and finds the information provided insufficient or incomplete.  20 C.F.R. §§ 404.1512(b)(2), 404.1520b(b)*.* Here, the ALJ obtained evidence from Plaintiff's medical sources, found the information sufficient to decide Plaintiff's application, and reasonably did not order a consultative examination.  Under these circumstances, this does not constitute error.  *See Zook*, 2010 WL 1039456, at *6 ("'[T]he decision to order a consultative examination is committed to the discretion of the ALJ, and where the record as a whole provides sufficient, unambiguous, and non-conflicting evidence to support the ALJ's decision, a consultative examination is not required.'" (quoting *Keplinger v. Astrue*, No. 5:07-cv-99, 2008 WL 4790663, at *5 (W.D. Va. Nov. 3, 2008))); *Hart v. Astrue*, No. 2:08-cv-56, 2009 WL 1163989, at *6 (E.D. Va. Apr. 27, 2009) (finding no reason for another consultative examination where "[t]he ALJ did not experience any difficulty receiving information from [the plaintiff's] medical sources; there was substantial evidence in the record, from multiple sources, to support a decision in the case; and there is no indication that [the plaintiff's] condition worsened from the date of the consultative examination to the date of the hearing" two years later).

Plaintiff also faults the ALJ for failing to obtain additional opinions from state agency medical consultants and instead relying on "lay speculation" as to the meaning of more recent medical evidence.  (Pl.'s Mem. at 13; *see also* Pl.'s Reply at 6.)  Regulations, however, impose on the claimant the duty to submit all evidence known relating to any alleged disability.  20 C.F.R. § 404.1512(a).  "This duty is ongoing and requires [the claimant] to disclose any additional related evidence about which [the claimant] become[s] aware."  *Id.* § 404.1512(a)(1).  If the ALJ determines that the evidence on file is insufficient to make a finding as to Plaintiff's disability, the regulations grant the ALJ discretion to seek additional or clarifying information.  *Id.* § 404.1520b.

Here, the ALJ considered the entire record, including the medical record and treatment history, Plaintiff's hearing testimony, Plaintiff's statements regarding her impairments, limitations, and activities of daily living, and three medical opinions.  The ALJ weighed the persuasiveness of the medical opinions and arrived at the RFC after considering the entire record, including additional evidence presented at the hearing level.  The ALJ did not find it necessary to request additional information or opinion evidence.  The Court did not locate in the record any effort by Plaintiff to inform the ALJ of any need for an updated medical opinion before she rendered her decision, and Plaintiff has failed to cite to any such request.  *See Jamie L. V. v. Kijakazi*, No. 3:20-cv-263, 2021 WL 4243438, at *7 (E.D. Va. Sept. 17, 2021) (finding that "the ALJ did not err in failing to acquire an updated medical opinion" where Plaintiff did not "inform the ALJ of any need for an updated medical opinion ahead of such hearing or for the thirty days afterward that the ALJ kept the record open").  Because the ALJ complied with applicable legal standards and substantial evidence supports the ALJ's findings, the Court finds no error.

### D.  Plaintiff Is Not Entitled to a Closed Period of Disability

Regulations define disability as the inability to engage in substantial gainful activity due to any medically determinable physical or mental impairments which have lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  Here, the time from the alleged date of onset to the date of the ALJ's decision exceeds 12 months.  In her final assignment of error, Plaintiff argues that the ALJ failed to consider "all 12-month periods of disability" in her decision.  (Pl.'s Mem. at 13-14.)  Specifically, Plaintiff contends that she was disabled during the closed 13-month period from July 5, 2019 (the alleged onset date) to August

2020, when Dr. Strain issued his medical opinion recommending sedentary work limitations.  (Pl.'s Mem. at 14.)

Plaintiff's argument fails for the reasons identified by the Commissioner: (1) Plaintiff failed to request a closed period of benefits; and (2) Plaintiff failed to carry her burden of establishing disability for at least a 12-month period.  (Def.'s Mem. at 22.)  This Court has characterized a similar challenge as "improper" where the claimant "did not specifically allege a closed period of disability before the ALJ [and only] raised [the issue] on appeal that the ALJ should have considered whether the claimant was entitled to a closed period of disability." *Charlene L. v. Saul*, 3:19-cv-626, 2021 WL 725822, at *9 (E.D. Va. Feb. 3, 2021).[6]  Even if such a challenge were proper, the Fourth Circuit and this Court have held that an ALJ's decision denying benefits over a specific time frame implicitly finds that any closed period of disability within the time frame does not exist.  *See, e.g.*, *Puckett v. Barnhart*, 61 F. App'x 21, 24 n.3 (4th Cir. 2003) ("Claimant's argument that he is entitled to a closed period of disability . . . is also meritless.  The ALJ found that at no time was claimant 'disabled' under the Social Security Act."); *Laws v. Astrue*, 3:08-cv-722, 2009 WL 3270770, at *7 (E.D. Va. Oct. 8, 2009) ("The ALJ found that Plaintiff had not been under a disability from the alleged onset date through the date of his decision.  In doing so, it is implicit that he also found that Plaintiff was not disabled for a closed period within that time span.") (internal citations omitted).[7]

---

[6] In *Charlene L.*, the Court acknowledged that the case was "factually distinct" from other cases in which the Court found that a closed period of disability was implicitly rejected in a finding of non-disability because "Plaintiff recognized she was well enough to return to work and amended her application before the ALJ to allege a closed period of disability."  2021 WL 725822, at *9. Here, on the other hand, Plaintiff did not allege a closed period of disability in the administrative proceedings.

[7] Other district courts within the Fourth Circuit have similarly found that "[i]mplicit in [a non-disability] finding is the fact that Plaintiff was not entitled to a closed period of disability at any relevant time."  *Butterworth v. Colvin*, No. 7:13-cv-558, 2015 WL 1407553, at *6 (W.D. Va. Mar.

For these reasons, the Court finds it improper for Plaintiff to raise the issue of a closed period of disability at this juncture.  In any event, the ALJ's determination that Plaintiff is not disabled during the period at issue implicitly includes the finding that Plaintiff is not disabled at any point during that period.  As found above, substantial evidence supports the ALJ's determination, and the ALJ applied correct legal standards in arriving at the same.

## V.    CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 13) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 15) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to the Honorable United States District Judge David J. Novak and to all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                          /s/

                                        Summer L. Speight
                                        United States Magistrate Judge

Richmond, Virginia
Date: January 26, 2024

---

25, 2015); *see also Atwood v. Astrue*, No. 5:11-cv-002, 2011 WL 7938408, at *6 (W.D.N.C. Sept. 28, 2011), *report and recommendation adopted*, No. 5:11-cv-002, 2012 WL 1858764 (W.D.N.C. May 22, 2012); *Allen v. Colvin*, No. ADC-16-2557, 2017 WL 2399591, at *5 (D. Md. June 1, 2017); *Harris v. Colvin*, No. 0:15-4628, 2016 WL 6310287, at *5 (D.S.C. Oct. 26, 2016); *Jackson v. Colvin*, No. 6:15-cv-2789, 2016 WL 5349092, at *6 n.5 (D.S.C. Sept. 26, 2016).